very well prepared and the court appreciates it. Next case 2015-3144 Harvey vs. MSPB Before we get started, I don't want to use your time, but I want to bring something to your attention, both counsel. The court realized in reviewing the matter for this case that in the appendix, which we understand to be prepared, Mr. Kirkpatrick, by you, right? which had a lot of personal information about your client that I think you may not necessarily want public, including his social security number. I have had the appendix removed from our public website after I realized that they were in there. I leave it to you. I will give you until Monday, if you would like to file a corrected version of the appendix that redacts his social security number, we will post that on the website. If you don't file a redacted version by Monday, I'm going to put back up the old one with the understanding that you know that it has his social security number in it. I just kind of thought that must have been inadvertent. Yes, it was. Thank you. What are the pages that we found it on of your effort? It's just two pages, JA138 and JA390. If you just file an electronic version by Monday, we can get it back up on the web. If you don't, I'm going to post it. I appreciate that. Please proceed. May it please the court, Joel Kirkpatrick, your honors, on behalf of Seamus Harvey, the appellant in this case. Here, as the court is aware, reading the briefs, that Mr. Harvey has established that he is an employee within the meaning of 7511. Obviously, the issue of the case, when we had a hearing, concerned whether or not his previous employment with the Pentagon police force was the same or You rely on Kordeshi. Yes, I do. Extensively. It seems to me that part of your problem is the distinction between the two, is the amount of retraining. Kordeshi seamlessly went into the new position, and Mr. Harvey had extensive retraining. You bring up a good point, your honor, because I didn't really see anything in this court's case law that really addressed this issue. I saw some other cases here, and like I'm going to point out in, I believe it's Benedict, the AJ really relies on that, Judge Brooks. He relied on that, but part of the issue was it wasn't exactly the same thing, because this person had 65 hours of training and still was unable to qualify for whatever the position was. Isn't your more fundamental problem with relying on Kordeshi in that, in that case, we vacated and remanded for a jurisdictional hearing. What we said is it's not sufficiently clear that these positions are dissimilar, or would require different training, or different requirements. Here you had your jurisdictional hearing, and we have factual findings with respect to the distinctions between the positions and training. Correct. I would also say this. Obviously, we don't agree with Judge Brooks' math and the hours that he calculated. One of the main issues, or one of the main arguments we make is this Spanish language class, which was not required at the time. It could be opted out. Even if it was not required, and it could be opted out, it would take 200 hours out. You'd still have 180 hours worth of additional training above and beyond. That's four and a half weeks. That's a full month of someone's life in training. When we bring on new employees, it's half of a day, so a month seems like a lot. Yes. Again, if we cook that down a little bit and boil it back a little bit more, the testimony what Ms. Seaman and Mr. Bonner testified to was, well, there was differences in, say, the farms training course. We had a different training course. You can't count those hours because our silhouettes were human, whereas the generic silhouettes of the FLETC, the Federal Law Enforcement Training Center, were blue silhouettes. They were also claiming that the ICE instructors that instructed these agents down there were also pool instructors. How it works at FLETC, and this is a little off the cuff, but how it works down there is they have all these people in all the academy. They train everyone, not just their own individual agency. Apart from the training, and I think you've made several really good points about that, this unfortunately is after an evidentiary hearing where we have to have a lot of discretion. The other thing they relied on was some of the differences between the actual job. One of the significant ones, it seems to me, is having to deal with illegal immigrants and having to contend with them as a police officer, as a security guard. Any of those positions, you don't have a continuing obligation to deal with the shertle. You don't have to go through and figure out, now what do we do with them? As an INS agent, it's not simply a matter of arresting them, of identifying and detaining a person who has done something wrong. You then have to process them all the way through and deal with them. That's a significant difference that takes the two jobs and makes them seem... I appreciate that comment. I think that's what triggers Kordeshi here. The court said, wait a second, you can't just say that if it's different agencies and different missions where you have a FAM, Federal Air Marshal, and an immigration agent, just because one's mandate is to investigate foreign nationals and illegal aliens and one is to maintain security on airplanes, they're both federal law enforcement agencies. That's the point of us coming up here. You could compare those two as individuals who both have obligations to not just deal with but to, when appropriate, detain, arrest. You're not saying that in the prior position that he would have had the obligation to process the individual, right? Again, to kind of trigger and piggyback on what you're saying is that he came across foreign nationals occasionally on his position and when they detained them or whatever they did with them, they were called the appropriate agency. Just like they testified at hearing in the depositions, Samantha Seaman and Jack Bonner. If the immigration agents were on process kilos of cocaine, they themselves would call in DEA. The point is that just because the jobs aren't the same, just because the mandate isn't the same, obviously I'm reading Kardashian and I think Kardashian should be applied a lot more broadly than the interpretation that the board is reading this. If you have federal law enforcement, I used examples in my brief you probably saw, if a clerk from this office where I checked in today decided to go be a DEA agent, I don't think that they could say, well, you know, I'm going to tack my time here at the Federal Circuit Court as a federal employee under that. No, that would be a ridiculous argument. Just like I cited cases in my brief about where it was obvious where somebody tried to tack or had a six year gap in their federal employment, they couldn't do that. There's obviously the requirements of employee go far beyond just the same or similar. I think the point is if you have an employee who was in federal law enforcement doing the same similar type stuff, I don't think the decision in Kardashian somehow limits that. It's a continuum and there are factual determinations that have to be made whether or not in that continuum you have jumped off of it. I want to go back to the Spanish language thing. You said you could opt out of it, but Judge Brooks made the finding you could only opt out of it if you could establish that you satisfied the knowledge requirement. So it wasn't really an opt-out-able thing if you couldn't speak Spanish. Right, I agree. If you had an employee that came on, they hire Spanish speakers and if they had some sort of ability to show their proficiency in Spanish, then they wouldn't have to take the class. Now they changed that after my client went through the academy, but that's continuing training in federal law enforcement. That's why I bring up the class. Where does a Pentagon security guard go outside of his or her post to hunt, say in an urban environment, for persons who may be lawbreakers? Well they don't. You bring up a good point. They're on the Pentagon and other facilities that the Pentagon controls, not just at the Pentagon. So obviously it's not just a glorified security guard, they're actually police officers. They would investigate a wide range, such as the FBI. They have a less mandate, but if they run across some sort of violations that would trigger another law enforcement... It's not their prime goal. They're protective. Correct. They're not primarily looking for detecting and locating lawbreakers. You're right, Judge. They have a limited mandate, but IEA agents have a limited mandate. They're not 1811s. The Department of Homeland Security has their own 1811 branch. These are 1801s with the immigration enforcement agents. They have a limited mandate to only look for and investigate illegal aliens or whatever. What about the distinctions and differences with respect to the law enforcement pension? Well again, I guess again it comes to the Kordashi, it doesn't really go into that. And obviously I'm looking and you know that I've spent a lot of time trying to peel that back and forth. Because in Kordashi they both would have had the same right to law enforcement pension. Correct. But again, I guess the way I read it is that it's the same or similar. I mean, are we requiring exactly the same occupational code? Are we requiring the exact classification series? Or are we looking to the nature of the position itself? So is part of your argument in response maybe along the lines of, I don't know, I mean I have to say I sat around and thought of why does the nature of the pension tell me anything about whether it's the same or similar position? As a federal judge, the biggest perk we have is we get our salary for life. At the age of 65, if I've served for 15 years, I keep getting my salary. There are a million other judges out there, including some in this building, Article 1, there are judges in state courts, they're sitting here and they're judging. And some of them are appellate court judges, just like me sitting in a panel. They don't actually have those pensions. Right. I don't know how the nature of that form of compensation tells me anything at all about the nature of the job duties and whether they're the same or similar. Well, I don't think there's any bearing on this. I don't think it has any relevance to the argument that I'm making. I mean it has no relevance as to whether or not their positions are same or similar. Well, to play the devil's advocate here with both of you apparently, but one of the reasons that they differentiate, and I'm not going to get into what federal judges deserve or don't deserve, but one of the reasons they differentiate with respect to the law enforcement pension is that one of the factors that go into deciding who gets those pensions and who doesn't is because there is a greater risk to law enforcement officers over the fact that they are then compensated for that with a higher pension. Agreed. So doesn't that at least reflect that some decision had already been made that the prior position your client held didn't carry those same risks? Well, I think specifically as it relates to the argument I'm making, again it's more of a broad argument, is it same or similar? And I think if we look at the positions, I decided Davis in 2009. And that was obviously the same department. However, there was a complete change of the job. And the argument back and forth, and this court said no, come on. I mean this is ridiculous. This is same or similar even though their jobs are definitely different. It had to do with math and mathematician before and statistics before that. I guess what I'm putting out to the court, and I see my time is into my rebuttal, is I don't think this court really addressed what I'm bringing up. And just to be quick about the Spanish language course. My client, if he would have been able to speak Spanish and opted out back then, we might not be here today. I might have won at the AmeriCorps. Is that really going to keep him? And Judge Brooks calculated four and a half weeks difference because two weeks of the initial training that he had with IEA and the Pentagon Police where there was approximately two weeks, he could do somehow there was another two and a half weeks coming up to 180. Then he threw the 200 hours. It sounds like a lot, but when you really think about it and scale it back, you see that my client testified, I know the almost the same, but the same instructors. So at what point is that line of demarcation to determine that it's either completely close or is it sufficient enough? But I'm going to reserve the rest of my time. Very good. Mr. Cohn. May it please the court. The MSPB correctly dismissed this case because the petitioner proved he was an employee for purposes of board jurisdiction. This case is about whether the petitioner served in the same or similar positions for one year and substantial evidence in the records supports the board's determination he did not. I want to address what the petitioner's counsel has said first regarding the 180 hours and saying that was eventually whittled down. That's not supported in the record. And in fact, what the record shows in the administrative judge's factual finding shows is that it was the petitioner's own admission that 180 hours of training was different. The Spanish part, a Spanish language course, I'm struggling to understand the inclusion of those 200 hours. And I'm not saying there should be any sort of per se rule, but let me ask you this. If you are a INS officer on the border in Texas, in El Paso, you have to take Spanish because everybody you're going to be dealing with is Spanish. Now suppose you transfer and you're still an INS officer and you're up in, let's see, Vermont. Where's one of those northern places near Canada? Hmm. Somewhere up there in the frozen Arctic. You're up there near Canada and suddenly you're dealing with all these French Canadians with their improper French. So do you have to now take French in order to be able to do that job? I still think it's the same or similar job. It's just that the individuals you're going to deal with in that capacity speak a different language. So I'm wondering if it makes sense to include the Spanish language course. I mean, if he's an INS agent, for example, in Washington, D.C., is he required to take the Spanish language course? The record shows that for the position, he's required to take the Spanish language course regardless of location. And it's really not the board's role to tell the Department of Homeland Security what should or should not be given to its employees in its training. This has nothing to do with whether or not they have to have the training. It has to do with whether the training has anything to do with whether the job is the same or similar. Whether that part of training has a, like, okay, for example, when you start a new job, you know how to use a telephone, but there's a new telephone system. You've got to learn how do I conference call? How does any impact on the nature of the job? Our role as a board really is to follow OPM's regulation. And OPM's regulation simply says that similar positions are positions where the employee could be interchanged between the positions without significant training. And if it's the Department of Homeland Security's decision that that Spanish language course is significant training, then we're required to follow that. It may well be significant training, but why is it necessarily indicative of a different position? Like I said, if we moved you up to Minneapolis, and we're telling you you got to learn French because everybody you're going to be dealing with is Canadians, you're just crossing the border in droves, you know, what, does that mean you're no longer in the same position? Because you have to take, because, like, any language immersion is really long-term training. Well, to some extent, doesn't it reflect agency determination that a particular language is more useful for dealing with a proportion of illegal aliens as opposed to others? I agree with Judge Duhalk there, and I think this is a decision that needs to remain within the discretion of the Department of Homeland Security. Would it be different then if he already satisfied the knowledge requirement? Would we just throw that out then? I don't think the ultimate result would be different, because you would still have that other 180 hours of training required for his position, and that other 180 hours of training is entirely related just to immigration law in general. Sometimes it strikes me, though, that a Pentagon police officer is at a very high-risk position, because anything could happen, and a Pentagon, as we know, could be an obvious target and has been an obvious target in the past. So why isn't that position just as much of a position that should be categorized as a law enforcement position as an ICE agent? It's not the fact that it's not a law enforcement position, and we're not arguing it's not a law enforcement position. We're simply just arguing that not all law enforcement positions are similar per se. In a non-presidential decision from this court in Amend, which the board first issued, it was found that an ATF inspector was not the same as an immigration agent because they investigated different areas of law, the ATF inspector being explosives and guns and the immigration agent being immigration. There's never been a holding from this court that says all law enforcement officers need to be treated similar just because they're law enforcement. As the board held after the hearing in this case, the petitioner failed to show by preponderant evidence that the knowledge, skills, and abilities of the position for the police officer position made the position similar to the immigration agent position. I'm guessing a lot of people would be pretty surprised if they thought they got into the federal law enforcement job to understand that they're now starting over. I can't speak to as to whether or not they would be surprised or not, Your Honor, but I think OPM's classification, as you spoke to earlier to the Petitioner's Council, actually indicates that there might be a greater degree of risk as to going outside of the Department of Defense and searching for illegal aliens as opposed to just being confined within a What about the argument that we were discussing before about retirement? Again, like the Spanish language course, I don't think there should be any per se rule in any direction. I can see why if you have all the same retirement benefits, that may tend to tell you a little something proxy, very distant proxy, but it might tell you a little something about the jobs being similar. But just because you have different retirement programs or different types of benefits, why does that tell me anything at all about the underlying nature of the job as it's being performed on a day-to-day basis? Well, I believe the board and the administrative judge noted that that factor isn't exactly just positive. It's just helpful in making the determination and it derived that factor from coordination. Why is it helpful that if you have a different retirement plan, I mean, look at CFR and FERS, right? We get all these retirement plan cases. Early government employees are under CFR, later government employees are under FERS. Those are totally different retirement plans, but it's the exact same job. Like, you know, do you see what I'm saying? It's hard for me to imagine that differences in the benefits that one accrues in retirement necessarily imply that they're different jobs. Well, we derived that requirement from this court's holding in Kouradeshi, which found noteworthy, but also not this positive there, that the positions are more likely to be similar because they had similar classification codes. If you look at the reverse, then you could say that they may not be similar because they do not have the same classification codes. Well, but isn't it possible that having the same codes and the same retirement speaks more about them being the same and should carry a little more weight than the fact that they have different codes, given that there are a gazillion different codes out there that are possible, and that just the fact of different codes means they're not... You think that really implicates anything about the underlying nature of the job as performed? Well, as Judge O'Malley stated, it might reflect an assessment by OPM about the risk taken on by each position. And given the fact that the... Well, that's why I said it should never be a per se rule, because I think you're right about that. I think that you're right to pick up on that. And in this case, I think that that is actually maybe a reason to think maybe it does make a difference here. That's why I was very careful to say from the very start it shouldn't be a per se rule. But in general, given the vast number of employment codes that exist within the government, it seems strange to me to say there's weight given to the different codes. Well, we're not asking for this court to issue a per se rule either way, as much as we're just saying that this was one factor that was helpful to the administrative judge in determining whether or not they were similar. Well, I'm just not sure that it's worthy of any weight in this case. The codes, I understand the retirement point, but the codes. Well, the... You've replaced... I was talking retirement and you brought in codes, so now we're morphing. The codes are basically indicative of which position gets which retirement benefit. The retirement code, I think it's M for the immigration agent position, just indicates that you get additional law enforcement pension that you don't get for the police officer position. If this panel has no further questions. Okay. Thank you, Mr. Fung. Just a few more comments, Your Honor. You brought up a good point. There's a changing mandate, I would imagine, with immigration. There's a changing mandate with what languages are actually important now. That's changed around the world. We see what's going on around the world. I mean, they may require French speakers. They may require Arabic speakers. They may require all kinds of things that everyone has to get retrained on. That's already been there. It's been there for a long time. Another point is... I don't think we're likely worried about the Canadians. Well, it's true. I thought I'd throw that in to be fair. But I just think that this court hasn't really dove into that because I think there's more of a two-step process that I see. You have to determine the positions themselves, how they're similar. And then you can talk about training. I think the board wants to focus only on training only, saying, look how much more it is. Whether you agree or not with 180 hours, 380 hours or less, I think you really have to take that two-pronged look. Are they federal law enforcement officers? Do they do the same thing? Do they carry guns? Or is one a clerk and one now is a chemist? Whatever it may be, there's got to be something, a bright light that this court can just say, you know, we need to make a decision on this because same or similar does not mean exact. And I think that's what the board wants. I think that's what counsel's arguing. I think that there's been no approach because all the case law I've seen talks about distinguishing core dashing. And no one's really kind of brought that up. But my client had the opportunity to take the Spanish language course immediately after the first thing, because that's when it was scheduled. But he testified that some other people would come back later, like months later in the first year. So I have nothing further to say unless the court has any questions. Thank you, Mr. Karpakar. We take the case under submission and we thank both counsel. Our final case.